**Garry P. MOORE, Appellant (Defendant Below),**

v.

**STATE of Indiana, Appellee (Plaintiff Below).**

**No. 283S49.**

Supreme Court of Indiana.

Dec. 12, 1984.

☜369.2(1)

Jo Angela Woods, Columbus, for appellant.

Linley E. Pearson, Atty. Gen. of Indiana, Michael Gene Worden, Deputy Atty. Gen., Indianapolis, for appellee.

PRENTICE, Justice.

Following a trial by jury, Defendant (Appellant) was convicted of Dealing in Cocaine, a class A felony, Ind.Code § 35–48–4–1 (Burns Supp.1984) and was sentenced to thirty (30) years imprisonment and fined $5,000. His direct appeal presents seven (7) issues for our review, as follows:

(1) Whether the trial court erred when it refused to dismiss the charge or, in the alternative, to suppress the testimony of a confidential informant;

(2) Whether the trial court erred when it refused to give Defendant's tendered instruction number 2;

(3) Whether the evidence was sufficient to sustain the conviction;

(4) Whether the trial court erred in allowing a police officer to testify that he had had difficulty in enlisting the aid of informants during his investigation of the Defendant;

(5) Whether the trial court erred in allowing a police officer to testify that the informant was reliable;

(6) Whether the trial court erred in allowing the informant to explain why he was afraid of the Defendant;

(7) Whether the trial court erred in overruling Defendant's motion for mistrial.

The record discloses that on September 16, 1981, the Defendant sold a confidential informant 6.8 grams of cocaine.

ISSUE I

On June 15, 1982, the court ordered the State to produce the confidential informant or disclose his address so that the Defendant could take his deposition. On June 29, 1982, Defendant filed his "Notice of Taking Deposition" accompanied by a subpoena for Rickie Karnes, the informant,

because the State had not disclosed his address. The deponent, however, failed to appear on July 8, 1982, the scheduled date of the deposition. Defendant then sought dismissal of the charge or, in the alternative, suppression of the informant's testimony. The trial court, on July 19, 1982, denied the motion, stating that the deponent had been made available to Defendant's counsel for a deposition on July 15, 1982. It further noted that Defendant's trial was scheduled to begin on July 26, 1982, but that it would consider a motion for continuance to allow Defendant more time to prepare in light of the July 15, 1982, deposition disclosures. Defendant did not request a continuance of the trial date, yet he now claims that he and his attorney were prejudiced because they "were hampered in their preparation for trial" and that the trial court abused its discretion in not imposing sanctions against the State for its late compliance.

In *Lloyd v. State*, (1983) Ind., 448 N.E.2d 1062, 1067, this Court noted:

"[U]nless the State's action in violating the discovery order is in such bad faith or is so misleading that the only way to avoid the denial of a fair trial for the defendant is to exclude the State's evidence, a continuance is the most appropriate remedy. The choice of the remedy lies within the discretion of the trial judge and will not be overturned unless that discretion has been clearly abused." (citations omitted).

In the case at bar, Defendant was able to depose the confidential informant eleven days prior to the date of trial. Furthermore, the trial court suggested that Defendant request a continuance, but Defendant did not avail himself of that opportunity, indicating that he was adequately prepared to begin the trial on July 26. Defendant has not shown how he was prejudiced by the State's tardy compliance with the discovery order, and we find no abuse of discretion by the trial court in its ruling.

## ISSUE II

■ Defendant argues that the trial court erred in refusing to give his tendered instruction number 2 which would have advised the jury that it could find him guilty of the lesser included offense of possession of cocaine, a class C felony. We agree with Defendant that possession of cocaine is an "inherently included" lesser offense of delivering cocaine, inasmuch as it is impossible to commit the greater offense without committing the lesser offense. *See Lawrence v. State*, (1978) 268 Ind. 330, 337–338, 375 N.E.2d 208, 212–213; *Roddy v. State*, (1979) Ind.App., 394 N.E.2d 1098, 1105–1106. However, our inquiry does not end there. We must next determine whether there was "evidence of probative value from which the jury could properly find the defendant guilty of such lesser included offense." *Hash v. State*, (1972) 258 Ind. 692, 698, 284 N.E.2d 770, 774. "The trial court is justified in finding the existence of such requisite evidence where upon careful review of the evidence produced to prove the element or elements differentiating the alleged greater and lesser offenses, the trial court concludes that such evidence has substantial probative value and is not in serious dispute." *Lawrence v. State*, 268 Ind. at 338, 375 N.E.2d at 213.

■ In the case at bar, the element distinguishing the lesser and greater offense is delivery. We, therefore, look to see if there was probative evidence that the Defendant committed the crime of possessing cocaine and either affirmative evidence that he did not commit the crime of delivery of cocaine or an absence of probative evidence that he did. *See Jones v. State*, (1982) Ind., 438 N.E.2d 972, 976. Substantial evidence was produced that Defendant delivered cocaine to Karnes. Karnes testified that Defendant sold cocaine to him; a tape recording of the transaction demonstrated that he did so, and Defendant himself testified that he sold cocaine to Karnes. This evidence is not disputed, notwithstanding that Defendant raised the defense of entrapment; hence, there was no error in refusing to give the tendered instruction on lesser included offenses.

## ISSUE III

■ Defendant raised the defense of entrapment and claims that although there was ample evidence to show that he was predisposed to sell marijuana, the evidence was insufficient to show that he was predisposed to sell cocaine. When a defendant raises the defense of entrapment, the State has the burden of proving, beyond a reasonable doubt, that the defendant's conduct was not the product of the efforts of law enforcement officials or agents or, alternatively, that the accused was predisposed to engage in the conduct. *Marts v. State*, (1982) Ind., 432 N.E.2d 18, 22; *Ryan v. State*, (1982) Ind., 431 N.E.2d 115, 117. Whether the Defendant was entrapped was a question for the jury, and on appeal we review the issue by the same standard that we apply to other challenges to the sufficiency of the evidence. *Martinez v. State*, (1983) Ind., 451 N.E.2d 39; *Marts v. State*, 432 N.E.2d at 22.

> "Upon a review for sufficient evidence, this Court will look only to the evidence most favorable to the State and all reasonable inferences to be drawn therefrom. If the existence of each element of the crime charged may be found therefrom, beyond a reasonable doubt, the verdict will not be disturbed. In such a review, we will not weigh conflicting evidence nor will we judge the credibility of the witnesses." (citations omitted).

*Loyd v. State*, (1980) 272 Ind. 404, 407, 398 N.E.2d 1260, 1264, *cert. denied*, 449 U.S. 881, 101 S.Ct. 231, 66 L.Ed.2d 105.

■ Specifically, Defendant argues that the only evidence of his predisposition to sell cocaine came from confidential informant Rickie Karnes and that his testimony "fails to have such credibility as to constitute evidence of probative value." (Brief of Appellant at p. 21). Inasmuch as there were three recordings of telephone conversations between Defendant and Karnes admitted into evidence and a tape recording of the actual transaction, we do not agree that all of the evidence of Defendant's predisposition to sell cocaine came from Karnes. In any event, we do not judge the credibility of witnesses. The evidence revealed that the Columbus Police Department utilized Rickie Karnes, a friend of the Defendant, as an informant in its narcotics investigation of the Defendant. Karnes purchased marijuana from Defendant on July 27, 1981 and on August 18, 1981. On September 2, 1981, he purchased approximately three grams of cocaine from the Defendant at his quoted price of $275.00. Karnes testified that on September 14, he and the Defendant were talking and that he told Defendant that he "hadn't done no coke in awhile (sic)" and that Defendant responded that he could get some. On September 15, 1981, Karnes contacted Defendant twice, and the tape recording of one of the two telephone conversations revealed the following exchange:

> "KARNES: Well, I's tryin' to see if you can get a 'hold of some of that cola again.
>
> MOORE: Yeah.
>
> KARNES: How much, how much did you say a quarter of that run?
>
> MOORE: Oh, what did I sell you that eighth for?
>
> KARNES: I think it was two seventy-five.
>
> MOORE: Fine, let's see. Two seventy-five. Probably around five, five and a quarter, somewhere like that.
>
> KARNES: Is it as good a coke as that other?
>
> MOORE: Yeah. A lot better.
>
> KARNES: When do you think you can get it?
>
> MOORE: Well, as soon as you get over here with the money, I can go get it."

■ On September 16, 1981, Karnes was searched and given $525. He was then equipped with a body microphone. Subsequently he telephoned the Defendant who asked him, "You gonna' come over and get that." Karnes responded that he would be there shortly. Karnes drove to Defendant's house with police officers following him. The tape recording of the drug transaction revealed that Defendant and Karnes entered Defendant's house, weighed the cocaine, used some of it, and completed the

sale. During the course of the transaction Defendant commented, "Sometimes man, if I get over there early, I can get that ... really pure if I happen to be right there, ... but it cost a lot of money and I have to be right there you know, to get it."

Notwithstanding Defendant's claim that he only sold cocaine to Karnes so that Karnes would stop "hassling" him, the tape recording of the transaction reveals no reluctance on Defendant's part to sell the cocaine. The evidence was sufficient to show that he was predisposed to sell cocaine and that the police and their agent merely provided him with the opportunity to do so. *See Marts v. State*, (1982) Ind., 432 N.E.2d 18, 22–23.

## ISSUE IV

During the State's examination of Police Officer John Myers, the following exchange occurred:

"Q. Had you made an effort in connection with Mr. Moore and informants, with other people or other informants?

A. I had made some effort in that direction, although it was ... I had run into some difficulty with that.

Q. What was the nature of the difficulty?"

Defense counsel then objected on relevancy and hearsay grounds. Both objections were overruled, and the witness responded:

"A. Some of the difficulties that I run into was one, either the C.I. or confidential informant didn't know Mr. Moore or that the confidential informant knew him but was reluctant about making a buy in the capacity of working for us, so they were afraid of him.

Q. You ran into that on more that one occasion?

A. I don't recall if it was more than one, I do recall one."

■■■ We note initially that the objection was inadequate to present the issue Defendant now seeks to argue. "Irrelevance," without more, is not sufficient.

Neither did the question necessarily call for hearsay. Defendant made no motion to strike the testimony and did not request that the jury be admonished. While the statement by the witness may have been somewhat prejudicial to the Defendant, we find that harm, if any, was minimal and does not constitute reversible error.

## ISSUE V

■■■ During the testimony of Indiana State Police Officer Michael Saltzman, the Prosecutor asked him about his relationship with the informant, Rickie Karnes. Saltzman testified that he had used Rickie Karnes as an informant on other occasions and that Karnes "had been successful." Defendant objected, arguing that eliciting such testimony was an improper attempt to bolster Karnes' "character" prior to his testimony and cross-examination thereof. Defendant argues, "It is clear that the State was attempting to tell the jury that Karnes was a trustworthy, reliable informant with a reputation or character for truthfulness." The Defendant infers a great deal more from the witness' statement than do we. Apparently counsel was intending to preclude a bolstering of Karnes' "credibility," and we agree with the trial court's observation that showing his success at making drug buys would hardly bolster his character. In any event, the objection was inadequate. Neither do we see any harm flowing from the revelation.

## ISSUE VI

Prior to the drug transaction for which Defendant was charged, the informant purchased marijuana on two different occasions from the Defendant. When the informant was asked on direct examination why he had not worn a body microphone to record the first marijuana transaction he said that he had been scared to do so, because the Defendant had told him about "gettin' after this guy with a ball bat, ... that turned some friend of his in and it kinda' worried me about going in first with a body mike."

Defendant argues that such evidence was inadmissible in that it constituted evidence of an uncharged prior crime and its sole purpose was to prejudice the jury. The State argues that the fact that it might present evidence of another crime does not render it inadmissible, inasmuch as the testimony tends to demonstrate Defendant's involvement in the drug trade.

Although the general rule is that evidence of uncharged prior crimes, separate and distinct from the one charged, is inadmissible on the question of guilt, such evidence may be admissible for some other purpose, for example, to show intent, motive, purpose, identity, common scheme or plan, or guilty knowledge. *Downer v. State*, (1982) Ind., 429 N.E.2d 953, 955; *Howard v. State*, (1981) Ind.App., 422 N.E.2d 440, 443; *Haynes v. State*, (1980) Ind.App., 411 N.E.2d 659, 664; *Coker v. State*, (1980) Ind.App., 399 N.E.2d 857, 860.

We are inclined to agree with the State that evidence that Defendant had assaulted someone who had informed on one of his friends tends to show that Defendant had been aware that he was engaged in an illegal activity and that he wanted to protect himself and his friends from informants. This "guilty knowledge" supports the inference that Defendant was not entrapped but rather that he sold the cocaine to Karnes of his own volition. There was no error in the trial court's ruling.

### ISSUE VII

During the direct examination of the informant, Rickie Karnes, regarding payments he had received for his services, the following exchange occurred:

"425.  Q.  Do you remember how much you got in connection with this particular buy on September 16th?

A.  One of them I think he gave me fifty dollars ($50). I think that was it.

426.  Q.  Okay. Never more than fifty dollars ($50)?

A.  No, it was usually around twenty-five ($25), somethin' like that.

427.  Q.  After this last buy, were you ever given a larger amount of money in order to leave town or to put yourself up?

A.  Yes, yes, yes, sure was.

428.  Q.  What was that?

A.  Gave a hundred dollars ($100), *I'd got whooped up in Edinburgh.* (emphasis added).

The Defendant moved for a mistrial, which motion was denied. Defendant's argument that the trial court erred in denying his motion for mistrial is predicated upon his claim that the "defendant was the victim of the State's evidentiary harpoon and was thereby placed in great peril." It is Defendant's contention that the emphasized portion of the above testimony disclosed to the jury evidence of an alleged assault by Defendant's friends upon Karnes after Defendant had been arrested on the instant charge. Such evidence had been the subject of a motion *in limine* granted by the trial court.

We do not agree with Defendant that Karnes' statement implied that the Defendant or anyone connected with him had assaulted Karnes. The word "whooped" is open to numerous interpretations, and there is nothing in Karnes' statement that would imply that "whooped," in this instance, meant assaulted. Nor is there any mention of the Defendant or his friends. Hence, there has been no showing that Defendant was placed in a position of grave peril to which he should not have been subjected. There was no error in the trial court's ruling. *See Morgan v. State*, (1981) Ind., 419 N.E.2d 964, 967.

Neither do we agree with Defendant's claim that the Prosecutor, throughout the trial, sought to portray the Defendant as a bad person to be feared and to be convicted for that reason. We find no prosecutorial misconduct.

We find no reversible error. The judgment of the trial court is affirmed.

GIVAN, C.J., and HUNTER, DeBRULER and PIVARNIK, JJ., concur.