**David Bruce BERGMANN and Kathleen C. Bergmann, Appellants (Defendants Below),**

v.

**STATE of Indiana, Appellee (Plaintiff Below).**

**No. 4–585A140.**

Court of Appeals of Indiana, Fourth District.

Dec. 26, 1985.

Dennis D. Graft, Robert C. Way, Kendallville, for appellants.

Linley E. Pearson, Atty. Gen., Michael Gene Worden, Deputy Atty. Gen., Indianapolis, for appellee.

CONOVER, Judge.

Defendants-Appellants, David Bruce Bergmann and Kathleen C. Bergmann, appeal their jury convictions for reckless homicide, a class C felony,[1] and neglect of a dependant, a class B felony.[2]

We affirm.

ISSUES

Bergmanns raise eight issues for our consideration. We have consolidated and restated them:

1. whether the trial court erred in denying Bergmanns' motion to strike the jury panel;

2. whether the trial court erred in permitting expert testimony concerning cause of death;

3. whether the defenses of mistake of fact and religious treatment were properly considered;

4. whether the child neglect statute, as characterized by the prosecutor, is unconstitutional; and

5. whether their reckless homicide convictions are contrary to law and unsupported by sufficient evidence.

FACTS

On June 7, 1984, David Bergmann notified the Ligonier Police Department his 9-month-old daughter, Allyson, was dead. Police Officers Calvin Kline and Thomas Lock investigated. They were joined at the Bergmann residence by John E. Ramsey, M.D., Coroner of Noble County. Neither the police officers nor Dr. Ramsey informed the Bergmanns of the right to remain silent.

The Bergmanns gave statements relating events of the days preceding the death of

---

**1.** IND.CODE 35–42–1–5.

**2.** IND.CODE 35–46–1–4.

their daughter. In summary, they said Allyson became ill on May 28, 1984, and they treated her with prayers, fasting and invocations of scripture. Allyson died June 7, 1984.

On June 28, 1984, the Bergmanns were each charged by information with reckless homicide and neglect of a dependent. They waived the right to counsel, electing to act *pro se.* At the court's urging they accepted court-appointed standby counsel. The court authorized their use of the law library at the Noble County Courthouse.

Bergmanns were tried before a jury and found guilty as charged. Each defendant received concurrent sentences of 5 years for class C felony reckless homicide and 10 years for class B felony neglect of a dependent.

Additional facts necessary to resolve the issues presented are discussed below.

DISCUSSION AND DECISION

I. *Denial of Motion to Strike
Jury Panel*

Following voir dire of part of the jury panel, David expressed dissatisfaction with the prosecutor's questioning and with the response of a panelist. The court considered David's expression of dissatisfaction a motion to strike the panel and denied it. The Bergmanns contend the court erred in refusing to strike the panel. They assert the prosecutor's questions and a panelist's responses tainted the remaining members of the panel.

(a) *Panelist's Statement*

■ In responding to the court's inquiry, one panelist, Kunce, stated he had formed an opinion concerning the guilt of the defendants, and could not set aside his opinion. He indicated the reasons for his opinion were (a) his knowledge of the church attended by the Bergmanns, and (b) his knowledge of other deaths associated with the church. Kunce was excused before other panelists were brought in. The trial court admonished the remaining members of the panel to disregard Kunce's statements, after determining they could disregard them. The Bergmanns contend the

entire panel should have been dismissed. We disagree.

Our supreme court has consistently held trial judges have broad discretion in regulating the form and substance of voir dire. To establish error there must be shown an abuse of discretion making a fair trial impossible. *E.g. ·Gossmeyer v. State* (1985), Ind., 482 N.E.2d 239, 241. Refusal to strike the jury panel was not an abuse of discretion here.

Kunce's remarks stated no facts relevant to the offenses charged. He merely said he had formed an opinion and could not fairly consider the facts presented. He said his opinion was based upon publicity, his living in the area of the Bergmanns' church, pre-trial discussion with others, and personal knowledge of an unrelated incident. Kunce did not relate any substantive facts or evidentiary matters which would necessarily prejudice other jurors. Neither did he articulate whether his opinion was one of guilt or innocence. *Cf. Stroud v. State* (1983), Ind., 450 N.E.2d 992, 994–995; *Bradberry v. State* (1977), Ind., 364 N.E.2d 1183, 1186–1187.

Usually, no reversible error will be found where a jury has been admonished to disregard what has occurred or other curative measures have been taken. *Cf. Freed v. State* (1985), Ind., 480 N.E.2d 929, 931; *Ramos v. State* (1982), Ind., 433 N.E.2d 757, 759. The admonition is presumed to have cured any error, particularly when the defendant did not object to the admonition. *Barnes v. State* (1982), Ind., 435 N.E.2d 235, 238. Bergmanns did not object to the admonition here. The court did not err in refusing to strike the panel.

(b) *Prosecutor's Questions on Voir Dire*

■ The Bergmanns next assert prosecutorial misconduct placed them in a position of grave peril to which they should not have been subjected. They claim such conduct is evidenced by the substance of the prosecutor's questions to the jury during voir dire. They assert his "... question(s) and comment(s) were deliberately calculated to prejudice the fair trial guarantees of the defendants by conditioning the prospec-

tive jurors to receive the impending evidence, not with an open mind and resolution to give the defendants the benefit of reasonable doubt but rather with the seeds of suspicion firmly planted and anxiously awaiting germination." (Appellants' Brief 15).

Although they forcefully discuss what they believe to be the proper purpose of voir dire and attempt to support their position by presenting 3 pages of photocopied prosecutorial voir dire, the Bergmanns failed to voice objections to any of these statements or questions at trial. Thus, they have preserved no error for review on this issue. Failure to raise a specific objection at the time improper comments are made results in waiver of the issue for review. *E.g. Abercrombie v. State* (1985), Ind., 478 N.E.2d 1236, 1238; *Isom v. State* (1985), Ind.App., 479 N.E.2d 61, 68.

## II. *Expert Witness Ramsey's Testimony*

### (a) *Expression of Opinion as to Cause of Death*

■ After lengthy examination as to his education, training, experience, the course of Allyson's illness, the autopsy performed upon Allyson, and his knowledge of the disease from which she suffered, Dr. Ramsey was asked to give an opinion as to whether Allyson would have died had she been treated in a timely fashion. David Bergmann then objected, stating

> Objection, Your Honor, that's, ah, it's on the grounds that it calls for a conclusion it's an after death allegation to support a before death allegation and that is a speculation.

(R. 416). The objection was overruled. Ramsey then was asked

> Doctor, within the bounds of reasonable medical certainty and looking at what you were told and also the results of the autopsy, and your training and experience as a physician, do you have an opinion as to whether or not Allyson Bergmann if she were timely medically treated if she would have died?

(R. 416). Ramsey responded

> I believe that Allyson had she had timely treatment had, would have had a very

good chance of surving (sic) this illness. Notice I said timely.

(R. 416). Ramsey testified Allyson had bacterial meningitis, and had no chance of survival without medical treatment. (R. 416). He stated early treatment in cases of this type provides a 90–95% survival rate.

The Bergmanns argue the question called for speculation. They contend Ramsey gave an opinion on a mere possibility. They note a doctor's testimony a thing is possible is no evidence at all. *Palace Bar, Inc. v. Fearnot* (1978), 269 Ind. 405, 415, 381 N.E.2d 858, 864.

In *Palace Bar*, the testifying physician was asked whether a fall could produce a heart attack. He responded it was possible. The court in *Palace Bar* noted there were several possibilities as to when decedent Fearnot had the fatal heart attack and there was no way of knowing, to a point of medical fact or conclusion, which of the possibilities occurred.

Ramsey's answer was not *Palace Bar* mere speculation. Ramsey's response was probative evidence because it was based upon reasonable medical certainty. *Palace Bar, Inc.*, 269 Ind. at 415, 381 N.E.2d at 824.

Further, the "reasonable medical certainty" test of *Palace Bar* was subsequently modified by our supreme court in *Noblesville Casting Division of TRW, Inc. v. Prince* (1982), Ind., 438 N.E.2d 722. We are cognizant of our supreme court's lack of unanimity concerning the extent to which *Palace Bar's* reasonable medical certainty test has been modified. However, any fair reading of *Palace Bar* in conjunction with *Noblesville Casting* makes Ramsey's testimony probative.

In the plurality opinion of *Noblesville Casting* Justice Hunter articulated foundational requirements of expert witnesses and the circumstances under which they should be permitted to give an opinion. *Noblesville Casting*, 438 N.E.2d at 727. Justice Pivarnik, who spoke for the court in

*Palace Bar,* concurred in *Noblesville Casting* with a separate opinion joined by Chief Justice Givan. What is clear from *Noblesville Casting* is an expert's opinion resulting from speculation in a vacuum is nonprobative and inadmissible.[3] What is equally clear is the expert witness need not speak with absolute certainty.[4]

Ramsey's expert opinion was admissible.

### (b) *Miranda Warnings*

■ The Bergmanns also contend the trial court erred by denying their motions to suppress Ramsey's testimony because they made statements to him without *Miranda* warnings. The State contends they waived the error by failing to make timely objection, and their failure to state this issue with sufficient specificity in their motion to correct error. The State further contends (a) the coroner is not a law enforcement officer, and (b) their statements were not made during custodial interrogation. We agree there was no custodial interrogation

and do not address the State's other contentions.

On the day Allyson died, David telephoned the Ligonier Police Department to report the death. He spoke with Officer Calvin Kline. Kline and Officer Tom Lock drove to the Bergmann residence. During the drive they radioed for emergency medical services. Ramsey and Frank Jogoda, a technician with the Indiana State Police were sent to the Bergmann home. Upon arrival the police officers and Ramsey were admitted to the Bergmann residence. Lock, testifying at the suppression hearing, stated the Bergmanns were never in custody and were not under arrest at any time.

Kline testified likewise. He noted he stationed himself at the front door to monitor the entry and exit of unauthorized persons. A crowd was gathering outside the house. Each officer testified the Bergmanns were free to come and go as they pleased because there was no reason to hold them.[5]

---

3. [HUNTER, J.]:

\* \* \* \* \* \*

... however conclusively any expert's opinion might be stated, the ultimate concern and prerequisite to admissibility is the reliability of the analytical methods or techniques upon which the conclusion or opinion is based. Where the foundational requirement has not been satisfied, the expert testimony has been precluded. (Citations omitted) 438 N.E.2d at 730

\* \* \* \* \* \*

... Of course, an expert's opinion that something is "possible" or "could have been" may be sufficient to sustain a verdict or award when it has been rendered in conjunction with other evidence concerning the material factual question to be proved.

\* \* \* \* \* \*

... No hard and fast rule can be stated; the matter is a factual one to be resolved on a case-by-case basis, depending upon the particular standards of proof or review which are applicable, as well as the evidence presented, including the expertise of the witness and the data and analytical methods upon which the opinion is based. (Citations omitted).
*Noblesville Casting,* 438 N.E.2d at 731.

4. [PIVARNIK, J.]:

\* \* \* \* \* \*

... when we deal with expert witnesses we are dealing with people with a high level of

education, knowledge, and understanding and who are certainly able to express themselves. We are also dealing with witnesses who are not eyewitnesses to anything but who are giving opinions based on facts given to them or conditions they observe at the time. It is impossible for every expert witness to testify with certainty that a given scientific fact or result is apparent. But by applying his experience in the field and the analytical processes to which he testifies, his certainty must be of such a degree that it is more than a bare possibility. As the majority has amply pointed out, in our pronouncements and those of other jurisdictions, when an expert witness has testified that his conclusion is based on "probabilities" or could be as a result of his observations, then this has been admissible. Precise and exact words need not be required but testimony must be given that has some probative weight and value. When any expert witness is asked if a certain thing is possible there is hardly a time when he could answer other than, "yes, it is possible." This is of no value in the fact-finding process.

*Noblesville Casting,* 438 N.E.2d at 731.

5. The Bergmanns contend the officers testified they were not free to leave. Our review of the record indicates otherwise. They refer us to pages 270–276 in support of their contention. There Lock responded to a general question on redirect examination. He said he would "prob-

At the suppression hearing and at trial Ramsey testified as to his interviews of the defendants at the scene and the post mortem examination of baby Allyson. The Bergmanns believe Ramsey's testimony concerning their statements to him should have been suppressed because neither the police officers nor Ramsey advised them of their right to remain silent and to an attorney as required under *Miranda v. Arizona* (1966), 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694. We disagree.

The principles announced in *Miranda* deal with self-incrimination when an individual is subjected to police interrogation while in custody or is otherwise deprived of his freedom of action in any significant way. When the compelling atmosphere inherent in custodial interrogation is not present, *Miranda* warnings are not required. *George v. State* (1979), Ind.App., 397 N.E.2d 1027, 1032. *See, also, Hill v. State* (1984), Ind., 470 N.E.2d 1332, 1335; *Smith v. State* (1984), Ind., 465 N.E.2d 1105, 1122; *Lawhorn v. State* (1983), Ind., 452 N.E.2d 915, 918; *Johnson v. State* (1978), Ind., 380 N.E.2d 1236, 1240; *Orr v. State* (1985), Ind.App., 472 N.E.2d 627, 636. *Miranda* does not apply to questioning by police in the course of a non-coercive, non-accusatory investigation of a crime. *See, e.g., Orr,* 472 N.E.2d at 636; *George,* 397 N.E.2d at 1032.

The Bergmanns were not in custody nor were they deprived of freedom of action in any significant way. Ramsey testified his information gathering discussion with them took 15 to 30 minutes. The Bergmanns initiated the contact with the authorities, freely admitted the police and coroner to their home, were free to enter and leave at will, and volunteered all the information they gave to Ramsey. There was here no coercive environment requiring invocation of the *Miranda* rule.

In similar circumstances our courts have determined parties were not in custody. *See, e.g., U.S. v. Kampiles* (7th Cir.1979),

609 F.2d 1233, 1242, (1980) *reh. denied.* (Spy defendant initiated meeting with authorities, attended meeting of own free will, was at liberty to come and go, and volunteered his story during conversational interview of reasonable duration); *Orr v. State* (1984), Ind.App., 472 N.E.2d 627, 636–637 (statements made by driver at scene of auto accident and hospital in preparation of accident report when driver was not under arrest were admissible); *Lawhorn v. State* (1983), Ind., 452 N.E.2d 915, 918 (drug dealer's non-custodial statement to police informant were not compelled and were admissible); *cf., Smith v. State* (1984), Ind., 465 N.E.2d 1105, 1122 (cohort's unsolicited remark in police van overheard by police driver was admissible); *George v. State* (1979), Ind.App., 397 N.E.2d 1027, 1032 (court found no custodial interrogation when defendant, after having been given *Miranda* advisements, made a statement to police officers he had invited to his room); *Hill v. State* (1984), Ind., 470 N.E.2d 1332, 1335 (following advisements, defendant while riding downtown with police officer, volunteered statements. Court determined they were uncoerced statements and admissible); *Johnson v. State* (1978), Ind., 380 N.E.2d 1236, 1239 (defendant's statement, made at his residence following police officer's greeting and before he was advised of his right not to speak, was admissible).

■ Further, the Bergmanns each testified at trial. Their testimony related the substance of the Ramsey interview. Thus, even if it had been error to deny their motion to suppress Ramsey's testimony, their in-court statements rendered any such error harmless.

### III. *Defenses*

The Bergmanns raised two defenses at trial, (a) mistake of fact, and (b) the religious treatment defense of I.C. 35–46–1–4, see note 8, *infra.* The mistake of fact defense, if believed, would negate the state

---

ably not" allow people to get up and leave a home to which he had been called and which contained a dead body. He had already responded on cross-examination he would not have restrained the Bergmanns had they wanted to leave. Kline testified likewise at R. 276. The

of mind elements necessary for the offenses charged. The religious treatment defense, if believed, merely provides an exemption from culpability.

### (a) *Mistake of Fact*

The Bergmanns assert the jury misapplied the affirmative defense of mistake of fact.[6] David and Kathleen each testified to a belief baby Allyson was merely teething.

While they do not specify to which charged offense they believe the jury misapplied their mistake of fact defense, they direct us to the court's instruction identifying "knowing" and "reckless" states of mind. We assume for these purposes, they believe the jury misapplied this defense to each offense charged.

The Bergmanns claim once the jury heard their testimony, the burden shifted to the State to rebut or disprove beyond a reasonable doubt their mistake of fact defense. They contend the State's failure to cross-examine either of them or to offer additional evidence to rebut, impeach, or contradict their statements demonstrates reversible error. Conversely, the State argues it was not required to present additional evidence; it could rely upon the evidence presented during its case-in-chief. We agree with the State.

■ The Bergmanns' arguments address only the timing[7] of the State's evidence and the relative weight to be given each party's evidence as to their defense. The State bears the burden of rebutting evidence which negates an element of an offense, i.e., it must disprove such defense beyond a reasonable doubt, *cf. Moore v. State* (1984), Ind., 471 N.E.2d 684, 688 (en-

trapment); *Wash v. State* (1983), Ind., 456 N.E.2d 1009, 1011 (self-defense). The State may meet its burden by directly rebutting evidence, by an affirmative showing defendants made no such mistake, or by simply relying upon the evidence of its case-in-chief. *See, e.g., Moore,* 471 N.E.2d at 688; *Wash,* 456 N.E.2d at 1011. It was not error for the State to rely on its case-in-chief.

■ Whether the Bergmanns made a mistake of fact was a question for the jury. On appeal, we review the issue by the same standard applied when sufficiency of the evidence is challenged. *Moore,* 471 N.E.2d at 688. It is the prerogative of the jury to weigh the evidence to determine who is telling the truth. *See, e.g., Graves v. State* (1984), Ind., 472 N.E.2d 190, 191. The jury here was not required to believe the defendants.

### (b) *Religious Treatment Defense*

The Bergmanns each testified they prayed for and read the Bible to 9-month-old Allyson during her illness. David fasted. They fully apprised the jury of the religious treatment they rendered Allyson.

They argue the religious treatment defense of IND.CODE 35-46-1-4 [8] "... is an absolute exemption from criminal liability." We do not disagree with the statement the defense may exempt them from criminal liability. However, they contend the jury did not decide they provided treatment by spiritual means in the legitimate practice of their religious faith. In effect they argue the jury was *required* to find in their favor once they asserted the defense and present-

triers of fact clearly resolved any potential issue arising therefrom against the Bergmanns.

**6.** I.C. 35-41-3-7 Mistake of fact

Sec. 7. It is a defense that the person who engaged in the prohibited conduct was reasonably mistaken about a matter of fact, if the mistake negates the culpability required for commission of the offense.

**7.** Bergmanns do not argue the State failed to disprove any particular element of the defense.

**8.** I.C. 35-46-1-4. Neglect of dependent—Child selling—

(a) A person having the care of a dependent, whether assumed voluntarily or because of a legal obligation, who knowingly or intentionally:

(1) Places the dependent in a situation that may endanter his life or health; ...

commits neglect of a dependent, a class D felony. However, ..., the offense is a class B felony if it results in serious bodily injury. It is a defense that the accused person, in the legitimate practice of his religious belief, provided treatment by spiritual means through prayer, in lieu of medical care, to his dependent. (Emphasis supplied).

ed evidence thereon, as a matter of law. We disagree.

■ While the State must establish beyond reasonable doubt all the elements of crime, it does not have the burden of negating all affirmative defenses which excuse or exempt a defendant's conduct. *Grogan v. State* (1985), Ind.App., 482 N.E.2d 300, 303, and cases cited therein. When a defendant raises the religious practice defense, he bears the burden of proving it, as an issue of fact. Such defense does not negate an element of the offense, it merely establishes a separate and distinct state of facts which may mitigate culpability. *Hall v. State* (1985), Ind.App., 482 N.E.2d 1185, 1187. The determination of liability in face of the assertion of whether the religious defense has been established by a preponderance of the evidence is a question for the trier of fact.

The jury here heard all the evidence presented by the parties, weighed it in the balance, and found the Bergmanns' evidence wanting. We cannot disturb the jury's conclusion. *See, e.g., Lawrence v. State* (1985), Ind., 476 N.E.2d 840, 842; *Graves v. State* (1984), Ind., 472 N.E.2d 190, 191.

■ The Bergmanns further argue, once the religious defense was asserted the State was required to present additional evidence to rebut or disprove the defense. We addressed the same argument as to their mistake of fact defense. Further, this issue is waived for failure to cite authority. Ind.Rules of Procedure, Appellate Rule 8.3(A)(7); *Reed v. State* (1985), Ind., 479 N.E.2d 1248, 1253.

We find no error concerning the defenses asserted.

### IV. *Constitutionality of the Child Neglect Statute*

■ The Bergmanns next assert the State's construction of the religious defense at trial rendered the statute so ambiguous it was unconstitutionally vague,

thus (a) they were denied due process of law, and (b) their constitutional right to the free exercise of their religion was violated. (Appellants' Brief 33–34). The State argues the Bergmanns have waived this issue by failing to raise it at trial and in their motion to correct errors. We agree.

No objection to the prosecutor's characterization of the religious defense was ever raised by the Bergmanns. The jury was instructed about the religious defense in the language of the statute. The Bergmanns neither objected nor tendered an instruction. Finally, in their motion to correct error they raised no issue regarding the prosecutor's characterization of the religious defense. Contemporaneous objections are necessary to preserve error. *Abercrombie v. State* (1985), Ind., 478 N.E.2d 1236, 1238; *Isom v. State* (1985), Ind.App., 479 N.E.2d 61, 68. Failure to properly raise issues in the motion to correct errors also results in waiver of those issues. *Harris v. State* (1985), Ind., 481 N.E.2d 382, 386; *Lowery v. State* (1985), Ind., 478 N.E.2d 1214, 1228.

### V. *Reckless Homicide Convictions*

The Bergmanns contend the guilty verdicts for reckless homicide are contrary to law, and not supported by sufficient evidence.

To sustain a conviction for reckless homicide under IND.CODE 35–42–1–5 there must be evidence of probative value on each of the three elements: (1) causation, (2) voluntariness of the defendant's act or omission, and (3) recklessness of defendant's conduct, not merely negligence. *Taylor v. State* (1983), Ind.App., 457 N.E.2d 594, 597, n. 6; *Slusher v. State* (1982), Ind.App., 437 N.E.2d 97, 102. An act of omission is an offense only if the defendant has a statutory, common law, or contractual duty to perform the act and "voluntarily" engages in the omission which constitutes the breach. *Slusher*, 437 N.E.2d at 100; IND.CODE 35–41–2–1(a).[9]

---

9. I.C. 35–41–2–1. Voluntary conduct.—(a) A person commits an offense only if he voluntarily engages in conduct in violation of the statute

defining the offense. However, a person who omits to perform an act commits an offense

**662**

The Bergmanns assert there is no evidence they acted voluntarily. They claim their inaction could not have been voluntary because they had no statutory, common law, or contractual duty to provide medical care to their child. Thus, they conclude, they could not be convicted for failing to provide medical care to her. (Appellants' Brief 47–48).

■ Parents are responsible for the care and keeping of their children. This serious obligation has long been imposed upon them by our common and statutory law. The doctrine of necessaries long has imposed upon parents the legal obligation and duty to provide support and education for their children. Our statutes also impose this obligation. *See, e.g., Taylor v. Taylor* (1982), Ind., 436 N.E.2d 56; *Eaglen v. State* (1967), 249 Ind. 144, 231 N.E.2d 147; *Crowe v. Crowe* (1965), 247 Ind. 51, 211 N.E.2d 164; *State ex rel. Butler v. Allen Circuit Court* (1961), 241 Ind. 627, 170 N.E.2d 663, vacated due to error in facts, 241 Ind. 627, 174 N.E.2d 411; *Wheeler v. State* (1912), 51 Ind.App. 622, 100 N.E. 25, 27. The obligation to provide support includes necessary medical expenses. *Scott County School District 1 v. Asher* (1975), 263 Ind. 47, 324 N.E.2d 496; *State ex rel. Butler v. Allen Circuit Court,* 437 N.E.2d at 102; *Collection Bureau of Warrick County, Inc. v. Sweeney* (1982), Ind. App., 434 N.E.2d 143, 144. IND.CODE 35–46–1–4; 35–46–1–5.

The Bergmanns' arguments [10] concerning a parent's lack of duty to provide medical care are without merit.

■ The evidence, including the testimony of each defendant, was clearly sufficient to show the voluntary nature of their failure to seek medical care. Again, they argue mere assertion of the religious de-

fense shows their inaction was not voluntary. We disagree. First, the religious defense to neglect of a dependant contained in IND.CODE 35–46–1–4 is not provided in the reckless homicide statute, IND. CODE 35–42–1–5. Further, each defendant testified to the action taken to treat their infant daughter. From this testimony the jury could reasonably infer they voluntarily determined they would seek no medical care for Allyson.

■ The Bergmanns finally contend the evidence was insufficient to establish "unjustifiable disregard of harm" involving "a substantial deviation from acceptable standards of conduct," concluding there was no proof they acted recklessly. Once again, they assert their testimony concerning their prayers, fasting, and incantations of biblical verse outweigh all the other evidence presented by the State.

Determinations of whether their actions, inactions, and omissions were unjustifiable or substantial deviations from acceptable standards of conduct were for the trier of fact. We cannot reweigh the evidence on appeal, and will not burden this opinion with yet another recitation of the evidence. The jury had before it substantial evidence of probative value from which it could and did determine the Bergmanns' failure to seek proper medical care for their daughter was reckless misconduct.

Affirmed.

MILLER, J., and YOUNG, P.J., concur.

---

only if he has a statutory, common law, or contractual duty to perform the act.

**10.** Bergmanns also argue the religious defense of IND.CODE 35–46–1–4 negates any duty to provide medical care. We have already dis-

cussed their misunderstanding of this defense. The defense may excuse liability for Child Neglect if believed by the trier of fact, but does not negate the duties imposed by statutory law, common law, or contract.