STATE OF NEBRASKA, APPELLEE, V. ANGELA J. GRANT, APPELLANT.
495 N.W.2d 253

Filed February 5, 1993.   No. S-91-708.

Thomas M. Kenney, Douglas County Public Defender, and Janine F. Ucchino for appellant.

Don Stenberg, Attorney General, and Joseph P. Loudon for appellee.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, GRANT, and FAHRNBRUCH, JJ.

SHANAHAN, J.

Angela J. Grant appeals from her conviction on the charge of knowingly and intentionally delivering cocaine as an illegal controlled substance, a crime defined by Neb. Rev. Stat. § 28-416(1) (Reissue 1989): "Except as authorized by the Uniform Controlled Substances Act, it shall be unlawful for any person knowingly or intentionally: (a) To manufacture, distribute, deliver, dispense, or possess with intent to manufacture, distribute, deliver, or dispense a controlled substance."

In her solitary assignment of error, Grant claims that the district court for Douglas County, as orally requested by Grant during the instruction conference at trial, should have

instructed the jury on the offense of illegal possession of cocaine under § 28-416(3) as a lesser-included offense in the delivery charge against Grant. Section 28-416(3) states:

A person knowingly or intentionally possessing a controlled substance, except marijuana, unless such substance was obtained directly or pursuant to a valid prescription or order from a practitioner while acting in the course of his or her professional practice, or except as otherwise authorized by the act, shall be guilty of a Class IV felony.

In response, the State asserts that Grant's assignment of error concerning the rejected instruction on a lesser-included offense cannot be considered on appeal because Grant's request was oral and, therefore, unwritten, notwithstanding the statutory direction concerning tendered instructions in both civil and criminal trials: "All instructions asked shall be in writing." Neb. Rev. Stat. § 25-1111 (Reissue 1989). See, also, Neb. Ct. R. of Prac. 4A(2) (rev. 1992) (if error is assigned in the refusal to give a tendered instruction, an appellant must specify in a praecipe that the transcript shall include the rejected instruction).

## THE COCAINE SALE

On November 20, 1990, the narcotics unit of the Omaha Police Division was aware that illegal controlled substances were being distributed in a section of the city where the residence of Annette Roddy was located and characterized Roddy's residence as "a known narcotics trafficking house." Jimmy Edwards, a "cooperating source" familiar with the area of illegal drug distribution near Roddy's house, worked with police by introducing undercover officers to individuals suspected of selling illegal controlled substances. Around 11 a.m. on November 20, in a monitored telephone call from police headquarters to Roddy, Edwards asked for a "250 of crack" cocaine, that is, a quantity of crack sold for $250. Roddy responded that she did not have any crack, but would "see what I can do for you." Angela Grant, who was staying in Roddy's house, was within earshot of Roddy, who, after hanging up the phone, told Grant that Edwards "wanted to get

some crack." After Grant's insistent urging, " 'Come on; let's go,' " Grant and Roddy departed for a parking lot which was the site indicated by Edwards for the possible purchase of crack.

At the same time, Edwards and James Haiar, an undercover narcotics officer, left the police station in Edwards' pickup truck, driven by Haiar. Other officers in the narcotics unit set up surveillance of the parking lot where Edwards and Haiar would meet Roddy and Grant. An unmarked police van was stationed near the parking lot so that police could photograph events at the site. Other narcotics officers were located nearby to record any conversation electronically transmitted from Haiar, who had been wired with a microphone on his person.

Edwards and Haiar arrived around 12:30 p.m. and met Roddy and Grant in the parking lot. After Roddy said that she and Grant did not bring any cocaine, the two women offered to flag down passing motorists to find out whether any of the passersby had any crack for sale. Both Roddy and Grant, at times separately and at other times jointly, flagged down passing traffic until Roddy recognized a man known as D.J., who pulled his car into the parking lot and stopped next to Edwards' pickup.

Grant and Roddy got into D.J.'s car; Grant sat in the front on the passenger's side, while Roddy sat in the left rear seat. Roddy told D.J. that the men in the pickup wanted "250 worth of crack." D.J. handed a quantity of crack to Roddy, who got out of the car and, closely followed by Grant, went to the pickup, which the women entered. Haiar was seated near the left door, behind the pickup's steering wheel; Edwards was next to Haiar; and Grant was sitting between Edwards and Roddy, who was next to the window on the right side. Roddy was still holding the cocaine in one of her hands when Haiar and Roddy began haggling about the quality of the cocaine and the price being asked. Referring to the cocaine being held by Roddy, Grant said: "Put it in my hands." Roddy handed the cocaine to Grant, who remarked that the crack was "good stuff" and then wrapped the several pieces of cocaine in plastic or cellophane given to her by Edwards. "Casey's" was printed on the wrapper. Haiar gave $250 in cash to Roddy, who got out of the pickup to

deliver the money to D.J. in his car, still parked next to the pickup. Haiar remained in the pickup with Grant, who handed Haiar the wrapped cocaine. Shortly thereafter, Grant got out of the pickup and went to D.J.'s car. Grant and Roddy departed with D.J., who drove the women to Roddy's house. On arrival at the house, D.J. gave Roddy $25 for "helping" in the sale to Haiar, but Roddy did not give Grant any of the $25.

Haiar returned to police headquarters and turned over the wrapped pieces of cocaine to the criminal laboratory section of the Omaha Police Division. Eventually, the several pieces contained in the wrapping were analytically determined to be cocaine.

On December 11, 1990, police, pursuant to warrants, arrested Grant and Roddy. Both were charged with delivering the cocaine obtained from D.J. in the parking lot. However, before Grant's trial, Roddy pled guilty to the charge against her, and she was awaiting sentence when Grant came to trial on the charge of delivering cocaine.

## GRANT'S TRIAL

In the State's case against Grant, 49 photographs taken by officers during surveillance of Edwards' pickup and D.J.'s car were introduced, depicting Grant and Roddy at the scene. Also, the tape-recorded conversation involving Grant, Roddy, Edwards, and Haiar in the pickup was played for the jury, who heard various remarks by Grant and Roddy regarding their involvement in the cocaine sale to Haiar.

Also, the several pieces of crack in the Casey's cellophane or plastic wrapping (exhibit 50) were identified by Roddy as the cocaine wrapped in "a little cellophane envelope" by Grant inside Edwards' pickup before Roddy left to deliver the $250 to D.J. Additionally, Haiar identified exhibit 50 as the crack and its wrapping which Grant handed to Haiar in the pickup. According to Haiar, Grant never received "any piece or rock" out of the cocaine which Roddy brought from D.J.'s car, the same cocaine that Roddy handed to Grant, who wrapped and passed the cocaine to Haiar. After the State rested, Grant did not present evidence.

During the conference on proposed instructions, Grant's

lawyer requested that the court give an instruction on possession of cocaine, that is, "an instruction regarding simply possession of a controlled substance . . . in addition to . . . the delivery of a controlled substance." The court declined to give Grant's requested instruction on possession of cocaine because the requested instruction was not "appropriate under the facts and circumstances in evidence in this case." The jury returned its verdict that Grant was guilty of unlawfully delivering a controlled substance (cocaine). See § 28-416(1).

## GRANT'S REQUESTED INSTRUCTION

First, we address the State's position that a trial court's refusal to give an orally requested instruction cannot be reviewed on appeal because § 25-1111 directs that all requested jury instructions shall be written.

In *State v. Hegwood*, 202 Neb. 379, 275 N.W.2d 605 (1979), a robbery case, defense counsel, during a conference on instructions, orally requested an instruction on larceny as a lesser-included offense of robbery. The court refused to give the larceny instruction. Hegwood was convicted of robbery and appealed to this court, which stated:

> The trial court in this case knew exactly what defense counsel was requesting and denied the request on the trial court's understanding of the law. To have required, in addition to this presentation directly to the trial court, that the refused instruction be reduced to writing would be a meaningless triumph of form over substance. We do not so hold. The defendant made a proper request to the court for a lesser-included offense instruction. The instruction was warranted. The trial court refused to do so. This was error and requires reversal.

202 Neb. at 383, 275 N.W.2d at 608. See, also, *State v. Samuels*, 205 Neb. 585, 289 N.W.2d 183 (1980) (pursuant to a prosecutor's oral request, a trial court may properly give a clarifying instruction concerning circumstantial evidence). Cf. *Stoco, Inc. v. Madison's, Inc.*, 235 Neb. 305, 454 N.W.2d 692 (1990) (an appellate court will not review a trial court's ruling on instructions when the instructions are absent from the record).

Thus, although § 25-1111 directs that a requested instruction

be written, when the record demonstrates that a trial court understood the nature of the orally requested jury instruction, an appellate court may review the trial court's refusal to give the orally requested instruction. See, *State v. Samuels, supra*; *State v. Hegwood, supra*.

During the instruction conference in Grant's trial, as unmistakably reflected in the bill of exceptions as a part of the record, defense counsel orally, but clearly, requested that the jury be instructed concerning the offense of illegal possession of cocaine, a crime prohibited by § 28-416(3). Also, in referring to the propriety of an instruction on illegal possession of cocaine as a lesser-included offense of unlawful delivery of cocaine, the trial court manifested a clear-cut understanding of the orally requested instruction. Under the circumstances, we are presented with a record that enables us to review the correctness of the trial court's refusal to instruct on illegal possession of cocaine as a lesser-included offense of delivering cocaine.

## LESSER-INCLUDED OFFENSES

In considering whether the trial court erred by refusing to instruct on possession of cocaine as a lesser-included offense, we must first examine aspects of law concerning lesser-included offenses.

In *State v. Jeffries*, 430 N.W.2d 728 (Iowa 1988), the Iowa Supreme Court discussed the background of the lesser-included offense doctrine:

> Generally, the [lesser-included offense] doctrine allows a trier of fact to convict a defendant of an offense less serious than the one charged. [Christen R. Blair, *Constitutional Limitations on the Lesser-Included Offense Doctrine*, 21 Am. Crim. L. Rev. 445 (1984).] . . .
>
> Historically, the doctrine developed to implement the policy at common law against multiple trials for the same allegations of illegal conduct. The doctrine eventually evolved as an aid to the prosecution when there was a failure of proof of some element necessary for conviction of the offense charged. Mascolo, *Procedural Due Process And the Lesser-Included Offense Doctrine*, 50 Alb.L.Rev.

263, 265-66 (1986). Today, the defense, more often than the prosecution, is likely to seek the doctrine's application as a hedge against conviction of the greater offense. Barnett, *The Lesser-Included Offense Doctrine: A Present Day Analysis For Practitioners*, 5 Conn.L.Rev. 255, 255-56 (1972).

430 N.W.2d at 730.

## The Two-Part Analysis for Lesser-Included Offenses.

In *State v. Jeffries, supra*, the court employed a two-part analysis for determining whether a trial court must instruct on a lesser-included offense: "In applying the doctrine [of lesser-included offenses,] courts must ask two questions: what is a lesser-included offense, and when should a trial court instruct on it." 430 N.W.2d at 730.

In addition to Iowa, courts of several other states have adopted the preceding two-part analysis for determining whether a requested instruction on a lesser-included offense must be given, for example, see, *State v. Wilson*, 701 P.2d 1058 (Utah 1985); *State v. Perkins*, 353 N.W.2d 557 (Minn. 1984); *Moore v. State*, 471 N.E.2d 684 (Ind. 1984); *State v. Skjonsby*, 319 N.W.2d 764 (N.D. 1982); and *Com. v. Channell*, 335 Pa. Super 438, 484 A.2d 783 (1984). See, also, Blair, *supra*; Janis L. Ettinger, *In Search of a Reasoned Approach to the Lesser Included Offense*, 50 Brook. L. Rev. 191 (1984); Edward G. Mascolo, *Procedural Due Process and the Lesser-Included Offense Doctrine*, 50 Alb. L. Rev. 263 (1986).

Therefore, whether a court must instruct a jury on a lesser-included offense depends on answers to the questions: (1) Is the offense for which an instruction is requested actually a lesser-included offense of the crime that has been charged against a defendant? (2) Is an instruction on a lesser-included offense justified under the evidence at trial?

## The Standard for a Lesser-Included Offense.

The first step of the two-part analysis, set out above, requires that a court determine whether the offense described in the requested instruction on a lesser-included offense is actually an offense included within a greater offense.

In *State v. Garza*, 236 Neb. 202, 459 N.W.2d 739 (1990), we

reaffirmed the cognate-evidence method or approach to determine whether one offense is related by law and evidence to another, greater offense and is, therefore, a lesser-included offense. In *Garza*, we held that such a determination depends on "whether a lesser-included offense existed based on the elements of the crime as charged in the information and the evidence supporting the charge." 236 Neb. at 207, 459 N.W.2d at 743. Also, in *Garza*, we rejected the strict statutory-elements approach expressed in *State v. Lovelace*, 212 Neb. 356, 360, 322 N.W.2d 673, 675 (1982): "To determine whether one statutory offense is a lesser-included offense of the greater, we look to the elements of the crime and not to the facts of the case." More recently, in *State v. Massa, ante* p. 70, 493 N.W.2d 175 (1992), we again employed the cognate-evidence method or approach to determine whether a court must instruct on a lesser-included offense.

As stated in *State v. Jeffries*, 430 N.W.2d 728, 731 (Iowa 1988):

> Under the cognate approach, a defendant may be convicted of a lesser offense that, under the strict statutory-elements approach, is not necessarily committed in the course of committing the greater offense. The lesser offense is related and, hence, "cognate" in the sense that it has several elements in common with the greater offense but may have one or two elements not essential to the greater crime. . . .
>
> . . . [T]he cognate-evidence method, focuses on the evidence supporting the charge rather than on the statutory elements or the accusatory pleading.

The distinction between a lesser-included offense necessarily included in a greater offense and a lesser-included offense determined under the cognate-evidence method or approach was expressed in *People v Beach*, 429 Mich. 450, 463-64, 418 N.W.2d 861, 867 (1988):

> [W]hen the lesser offense is necessarily included, rather than cognate, the evidence will always support the lesser offense if it supports the greater. However, cognate offenses require the evidence in each particular trial to be examined to determine whether the specific evidence

adduced would support a conviction of the requested lesser offense.

Subsequently, in *People v Heflin*, 434 Mich. 482, 495, 456 N.W.2d 10, 15 (1990), the Michigan Supreme Court explained the difference between "necessary" lesser-included offenses and those determined under the cognate-evidence method or approach:

> Necessarily included lesser offenses are those in which the defendant cannot commit the greater offense without also committing the lesser offense. On the other hand, cognate lesser included offenses are those in which the lesser offense shares some common elements with the greater offense, but which may also include some elements not found in the greater offense.

See, also, *People v Pouncey*, 437 Mich. 382, 387 n.4, 471 N.W.2d 346, 349 n.4 (1991): "A cognate lesser offense shares several elements and is in the same class of offenses as the greater crime. However, it differs from the greater crime in that it contains some elements not found in the higher offense." See, further, *State v. Boyenger*, 95 Idaho 396, 509 P.2d 1317 (1973) (when the evidence indicates that a defendant might be convicted of a lesser-included offense, an instruction on the lesser offense is appropriate).

*Evidence for an Instruction on a Lesser-Included Offense.*

If a court determines that an offense described in a requested instruction is a lesser offense included within a greater offense, then, under the two-step analysis and the cognate-evidence approach or method concerning a determination of greater and lesser-included offenses, a court must determine whether the evidence justifies an instruction on the lesser-included offense.

" 'The test which must be applied in determining whether or not to submit a lesser-included offense is whether there is evidence which produces a rational basis for a verdict acquitting defendant of the offense charged and convicting him of the lesser offense.' " *State v. Tamburano*, 201 Neb. 703, 707, 271 N.W.2d 472, 474 (1978) (quoting from *State v. McDonald*, 312 Minn. 320, 251 N.W.2d 705 (1977)).

Thus, after a court has determined that the requested

instruction is based on a lesser-included offense, the court must examine the evidence, generated by the State or the defendant, to determine whether the jury could reasonably acquit the defendant of the greater offense, but reasonably find the defendant guilty of the lesser-included offense. See *State v. Massa, ante* p. 70, 493 N.W.2d 175 (1992). The preceding standard or rule for determining whether an instruction on a lesser-included offense should be given to the jury does not suggest that submission of lesser-included offenses is automatic on request. The key word in the standard or rule is "reasonably," or, as expressed in *State v. Tamburano, supra*, a "rational basis" for an acquittal of the greater charge and a conviction of the lesser. As pointed out in *State v. Williford*, 103 Wis. 2d 98, 111, 307 N.W.2d 277, 282 (1981):

> "The rule does not suggest some near automatic inclusion of all lesser but included offenses as additional options to a jury. Only if 'under a different, but reasonable view,' the evidence is sufficient to establish guilt of the lower degree and also leave a reasonable doubt as to some particular element included in the higher degree but not the lower, should the lesser crime also be submitted to the jury . . . ." [Quoting from *State v. Bergenthal*, 47 Wis. 2d 668, 178 N.W.2d 16 (1970).]

> Indeed, as noted in *Boyer v. State*, 91 Wis.2d 647, 668-69, 284 N.W.2d 30 (1979):

> "[T]his court has on several occasion[s] pointed out that it is error to instruct the jury as to lesser offenses when the evidence does not so warrant.

> " 'The early cases point out and emphasize and we must stress again, because the question keeps recurring, that a determination of whether an instruction on a lesser included crime should be given to a jury is not solved by merely determining the crime charged includes the lesser offense because juries are not to be given the discretion or freedom to pick and choose what offense the accused should be found guilty of. . . .' "

See, also, *People v Pouncey, supra* (when evidence would support a conviction of the lesser offense, an instruction on the lesser-included offense is required, but, in the absence of

evidence for a conviction of the lesser offense, the instruction should not be given); *State v. Jeffries*, 430 N.W.2d 728 (Iowa 1988) (a trial court examines all the evidence to determine whether there is a submissible question of fact for the jury with an instruction on a lesser-included offense); *Moore v. State*, 471 N.E.2d 684 (Ind. 1984) (a trial court reviews the evidence to determine whether that evidence would support acquittal of the greater charge and conviction of the lesser); *State v. Wilson*, 701 P.2d 1058 (Utah 1985) (permissible instruction on a lesser-included offense requires evidential support for acquittal of the greater offense and conviction of the lesser); *State v. Perkins*, 353 N.W.2d 557 (Minn. 1984) (a lesser-included offense instruction is warranted only if the evidence would rationally support a not-guilty verdict on the greater offense and a guilty verdict on the lesser offense); *State v. Skjonsby*, 319 N.W.2d 764 (N.D. 1982) (evidence must support an acquittal as to the greater offense and a conviction of the lesser).

Even when an alibi or insanity defense is used or the defendant presents no evidence to rebut the greater offense charged, a lesser-included offense instruction is appropriate if the evidence adduced controverts an elevating element of the greater offense. See, *State v. Massa, supra*; *State v. Jeffries, supra*.

> To establish reversible error from a court's refusal to give a requested instruction, an appellant has the burden to show that (1) the tendered instruction is a correct statement of the law; (2) the tendered instruction is warranted by the evidence; and (3) the appellant was prejudiced by the court's refusal to give the tendered instruction.

*State v. Reynolds*, 235 Neb. 662, 691, 457 N.W.2d 405, 423 (1990). Accord, *Renne v. Moser*, 241 Neb. 623, 490 N.W.2d 193 (1992); *Jensen v. Archbishop Bergan Mercy Hosp.*, 236 Neb. 1, 459 N.W.2d 178 (1990); *State v. Pettit*, 233 Neb. 436, 445 N.W.2d 890 (1989); *Burns v. Veterans of Foreign Wars*, 231 Neb. 844, 438 N.W.2d 485 (1989).

When the evidence fails entirely to show a crime of lesser degree than that charged against a defendant, refusal to give a

lesser-included offense instruction is not prejudicial error. See, *State v. Narcisse*, 231 Neb. 805, 438 N.W.2d 743 (1989); *State v. Buster*, 228 Neb. 387, 422 N.W.2d 373 (1988); *State v. Brown*, 225 Neb. 418, 405 N.W.2d 600 (1987); *State v. Schwartz*, 219 Neb. 833, 366 N.W.2d 766 (1985).

## WAS GRANT ENTITLED TO AN INSTRUCTION ON POSSESSION?

We now consider Grant's requested instruction in light of the two-part, or two-step, analysis to determine whether Grant was entitled to that instruction.

In *Moore v. State*, 471 N.E.2d 684 (Ind. 1984), the defendant was convicted of dealing in cocaine. In Moore's trial, the evidence showed that he personally sold and delivered cocaine to an informant, Karnes. However, the trial court refused to give a jury instruction on possession of cocaine as a lesser-included offense of the delivery charge. The Supreme Court of Indiana, in affirming Moore's conviction, concluded that the trial court properly rejected Moore's requested instruction on possession of cocaine as a lesser offense of delivering cocaine and stated:

> We agree with Defendant that possession of cocaine is an "inherently included" lesser offense of delivering cocaine, inasmuch as it is impossible to commit the greater offense without committing the lesser offense. . . . However, our inquiry does not end there. We must next determine whether there was "evidence of probative value from which the jury could properly find the defendant guilty of such lesser included offense." [Quoting from *Hash v. State*, 258 Ind. 692, 284 N.E.2d 770 (1972).] . . .
>
> In the case at bar, the element distinguishing the lesser and greater offense is delivery. We, therefore, look to see if there was probative evidence that the Defendant committed the crime of possessing cocaine . . . . Substantial evidence was produced that Defendant delivered cocaine to Karnes. Karnes testified that Defendant sold cocaine to him; a tape recording of the transaction demonstrated that he did so, and Defendant himself testified that he sold cocaine to Karnes. This

evidence is not disputed, notwithstanding that Defendant raised the defense of entrapment; hence, there was no error in refusing to give the tendered instruction on lesser included offenses.

471 N.E.2d at 687.

Because all the elements for illegal possession of a controlled substance are contained within the elements of a person's unlawfully delivering a controlled substance, illegal possession of a controlled substance is a lesser-included offense of unlawfully delivering a controlled substance. However, at Grant's trial, the evidence showed that Grant and Roddy flagged down passing motorists to inquire if occupants had crack for sale. When D.J. happened on the scene, Grant and Roddy obtained cocaine from him as a vendor of the controlled substance. Immediately thereafter, Roddy, carrying the cocaine obtained from D.J., and Grant left D.J.'s car, and the women walked directly to Edwards' pickup. Inside the pickup, Roddy handed the cocaine to Grant, who wrapped all the cocaine and, in turn, passed the wrapped cocaine to Haiar in exchange for the $250 which Haiar then handed to Roddy. The cocaine identified and introduced as physical evidence at Grant's trial was the same cocaine that was manually moved from D.J. to Roddy and then from Roddy to Grant, who immediately wrapped the cocaine, which she then handed directly to Haiar. Therefore, the only cocaine involved in the charge against Grant was the crack that, for practical purposes, moved in a virtually unbroken and steady course from D.J., the seller, through the hands of intermediaries, Roddy and Grant, to the eventual recipient, Haiar. Thus, Grant and Roddy were human instruments for the exchange of cocaine and money between D.J. and Haiar. In that factual setting, a jury could not rationally conclude that Grant possessed the crack for her personal use vis-a-vis delivery in a cocaine sale. Rather, Grant's only possession of the crack formed a link in a chain for delivery of the cocaine from a distributor to a recipient and ostensible consumer other than Grant. Hence, under the evidence, Grant possessed the cocaine for transmission to another, not for her retention and personal consumption. Consequently, the trial court properly refused to give an

instruction on Grant's illegal possession of cocaine for her personal use.

Grant's case is easily distinguished from *State v. Massa, ante* p. 70, 493 N.W.2d 175 (1992). Massa was charged and convicted of intending to deliver marijuana in his possession. During a search with a warrant, police discovered several baggies of marijuana in a house where Massa was present. Additionally, while searching Massa's person, police found a large quantity of cash, a pipe, and a baggie of marijuana in his jeans pocket. We concluded that "[f]rom these facts, the jury could reasonably find that the amount of marijuana found on Massa, coupled with the pipe, was consistent with possession for personal use and contradictory to possession of an amount held for sale." *Id.* at 76, 493 N.W.2d at 180. In contradistinction from *Massa*, Grant's case contains only evidence that the cocaine was moved from D.J., through Grant, to Haiar; hence, nothing indicates that while the cocaine was moving from D.J. to Haiar, Grant intended to retain the cocaine for her personal use and consumption.

## CONCLUSION

Because the court properly rejected Grant's request for an instruction on the lesser-included offense and since the court's rejection of the requested instruction is the only assignment of error, we affirm the judgment entered by the trial court on the jury's verdict that Grant knowingly or intentionally delivered cocaine, in violation of § 28-416(1).

AFFIRMED.