Danny DAVIS, Petitioner–Appellant,

v.

William N. BARBER, Gordon Faulkner
and Lewis Gregory,
Respondents–Appellees.

No. 87–1736.

United States Court of Appeals,
Seventh Circuit.

Argued Dec. 10, 1987.

Decided Aug. 5, 1988.

David E. Vandercoy, St. Thomas Univ., School of Law, Miami, Fla., for petitioner-appellant.

Sabra A. Weliever, Indianapolis, Ind., for respondents-appellees.

Before CUDAHY, COFFEY and RIPPLE, Circuit Judges.

RIPPLE, Circuit Judge.

Petitioner Danny Davis appeals from a judgment of the district court denying his petition for a writ of habeas corpus. Mr. Davis contends that his due process rights were violated when he was convicted by the state of Indiana of nonsupport of a dependent child, a violation of Ind.Code § 35–46–1–5 (1986). Mr. Davis claims that the state impermissibly shifted to him the burden of proving by a preponderance of the evidence his inability to pay support for his three children. 657 F.Supp. 469. For the reasons set forth in the following opinion, we affirm the judgment of the district court.

I

Background

A. *Facts*

Mr. Davis was obligated under a divorce decree, entered on August 10, 1979, to pay child support of $100 per week for his three children. From August 10, 1979 until September 27, 1983, Mr. Davis paid a total of $5,045 in support, but was in arrears in the amount of $16,785. As a result of his failure to meet his obligations under the decree, the state charged Mr. Davis with

violating Ind.Code § 35–46–1–5.[1] That statute makes it a felony for a person to knowingly or intentionally fail to provide support to his dependent child. The statute permits an affirmative defense to the charge if the defendant can prove that he was unable to provide support.

At trial, Mr. Davis testified that he had been unable financially to make child support payments because of unemployment. He testified that he had been employed fulltime as an ironworker when the child support order had been entered, but that he then lost his job and had been unable to find employment. His tax returns for the relevant years, which were admitted at trial, revealed the following income:

| Year | Taxable Income |
|------|----------------|
| 1979 | $21,318 |
| 1980 | $ 9,043 |
| 1981 | $ 8,758 |
| 1982 | $ 9,247 |
| 1983 | Insufficient Income To File Return |

Mr. Davis requested that the Indiana trial court instruct the jury that the state had the burden of proving beyond a reasonable doubt that he could have met his support obligations. This instruction was refused. Instead, the jury was instructed that Mr. Davis carried the burden of proving by a preponderance of the evidence that he was unable to provide support. Mr. Davis objected to this instruction on the ground that (1) the instruction impermissibly shifted the burden of proof to Mr. Davis of negating an element of the crime, and (2) due process precludes conviction for a crime of omission unless the state proves that the defendant had the ability to perform the required act.

After a jury had found him guilty, Mr. Davis filed a timely appeal with the Indiana Court of Appeals, objecting to the jury instructions regarding the burden of proof with respect to his defense of inability to pay. That court affirmed the conviction. It concluded that proof of ability to pay child support is not an element of the offense, and that therefore it was constitutionally permissible to require the defendant to prove inability to pay as an affirmative defense. The Indiana Supreme Court declined further review.

### B. District Court Opinion

Having exhausted his state remedies, Mr. Davis filed a habeas corpus petition in federal district court. That court denied Mr. Davis' petition. The court began its analysis by noting that "[t]he state may require a defendant to prove an affirmative defense only if the affirmative defense 'does not serve to negative any facts of the crime which the State is to prove in order to convict.'" *Davis v. Barber,* 657 F.Supp. 469, 471 (N.D.Ind.1987) (quoting *Patterson v. New York,* 432 U.S. 197, 206–07, 97 S.Ct. 2319, 2325, 53 L.Ed.2d 281 (1977)). In other words, the court concluded that Mr. Davis could not be required to prove inability to provide support if ability to pay is an element of the crime.

The district court then determined that ability to pay is not an element of the offense. In the court's view, while voluntariness is normally an element of a crime under Indiana law, voluntariness is not an element of a crime of omission. Relying on Ind.Code § 35–41–2–1,[2] the court ruled that

1. Section 35–46–1–5 of the Indiana Code provides that:
   (a) A person who knowingly or intentionally fails to provide support to his dependent child commits nonsupport of a child, a Class D felony.
   (b) It is a defense that the child had abandoned the home of his family without the consent of his parent or on the order of a court, but it is not a defense that the child had abandoned the home of his family if the cause of the child's leaving was the fault of his parent.
   (c) It is a defense that the accused person, in the legitimate practice of his religious belief, provided treatment by spiritual means through prayer, in lieu of medical care, to his dependent child.
   (d) It is a defense that the accused person was unable to provide support.
   Ind.Code § 35–46–1–5 (1986).

2. Section 35–41–2–1 of the Indiana Code provides, *inter alia,* that:
   (a) A person commits an offense only if he voluntarily engages in conduct in violation of the statute defining the offense. However, a person who omits to perform an act commits an offense only if he has a statutory, common law, or contractual duty to perform the act.

the state did not have to prove voluntariness when the defendant had a statutory, common law, or contractual duty to perform an act. The court also noted that the nonsupport statute did not contain a voluntariness requirement. Thus, the court said:

> The question of ability to pay does not negate any element of the offense of nonsupport of a dependent child as defined by Indiana statute. Instead, it excuses and makes non-criminal an omission that would otherwise be criminal. It is an affirmative defense and, therefore, it was permissible to place on the accused the burden of proving that affirmative defense.

*Davis*, 657 F.Supp. at 472.

The district court then proceeded to reject Mr. Davis' argument that his due process right to fundamental fairness was violated when the state was allowed to prove a crime of omission without being required to prove that Mr. Davis had the ability to act. The court noted that many states have statutes similar to Indiana's that require the defendant to prove inability to pay as an affirmative defense. The court stated that these statutes recognize that it is reasonable to assume that if a person desires to have children, then he or she intends to accept the burdens of parenthood. *Id.* (quoting *State v. Ducey*, 25 Ohio App.2d 50, 266 N.E.2d 233, 236 (Ohio Ct. App.1970)). The court said that, "[w]hile it may be a harsh sanction, it is not fundamentally unfair to impose on persons who fail to meet their human and social responsibility to support the children which they, of their own free will, bring into this society." *Id.* 657 F.Supp. at 472–73. For that reason, the court ruled that the Indiana statute did not offend due process. *Id.* at 473.

## II

### Analysis

Mr. Davis advances two reasons why Indiana's allocation of the burden of proof on inability to pay violates due process. First, he asserts that ability to provide

Ind.Code § 35–41–2–1 (1986).

support is an element of the offense of nonsupport of a dependent child and thus must be proved by the prosecution beyond a reasonable doubt. *See In re Winship*, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970). Second, he contends that, regardless of whether ability to pay is an element of the offense as defined by the state, requiring the defendant to prove by the preponderance of the evidence that he was unable to provide support violates principles of fundamental fairness. We shall address each of these submissions separately.

### A. *Elements of the Offense*

#### 1.

The Supreme Court in *In re Winship* held that "the Due Process Clause protects the defendant against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." 397 U.S. at 364, 90 S.Ct. at 1073. Mr. Davis contends that Indiana's statute, which requires the defendant to prove inability to pay as an affirmative defense, violates the *Winship* principle because it shifts the burden of proof to the defendant on an essential element of the crime. The merits of Mr. Davis' claim is controlled by a number of Supreme Court cases which we discuss below.

In *Mullaney v. Wilbur*, 421 U.S. 684, 95 S.Ct. 1881, 44 L.Ed.2d 508 (1975), the Supreme Court "explicitly acknowledged the link between *Winship* and constitutional limits on assignment of the burden of proof." *Engle v. Isaac*, 456 U.S. 107, 133 n. 42, 102 S.Ct. 1558, 1574 n. 42, 71 L.Ed.2d 783 (1982). In *Mullaney*, the Court addressed the constitutionality of a Maine statute that defined murder as the unlawful killing of a human being " 'with malice aforethought, either express or implied.' " 421 U.S. at 686 n. 3, 95 S.Ct. at 1883 n. 3 (quoting Me.Rev.Stat.Ann. tit. 17, § 2651 (1964)). Under the statute, malice was to be implied from any intentional killing. *Id.* at 686, 95 S.Ct. at 1883. The defendant could negate this presumption of malice

and reduce the crime to manslaughter if he proved by a preponderance of the evidence that the murder was committed in the heat of passion on sudden provocation. The jury was instructed that " 'malice aforethought and heat of passion on sudden provocation are two inconsistent things,' [App.] at 62; thus, by proving the latter the defendant would negate the former and reduce the homicide from murder to manslaughter." *Id.* at 686–87, 95 S.Ct. at 1883–84. The Court held that this statutory scheme violated due process because it shifted to the defendant the burden of proof on the question of malice. As the Court explained in a later case distinguishing *Mullaney:*

> [M]alice, in the sense of the absence of provocation was part of the definition of that crime. Yet malice, *i.e.,* lack of provocation, was presumed and could be rebutted by the defendant only by proving by a preponderance of the evidence that he acted with heat of passion upon sudden provocation. In *Mullaney* we held that however traditional this mode of proceeding might have been, it is contrary to the Due Process Clause as construed in *Winship.*

*Patterson v. New York,* 432 U.S. 197, 216, 97 S.Ct. 2319, 2330, 53 L.Ed.2d 281 (1977).

In *Patterson,* the Court considered the constitutionality of a New York statute for second-degree murder. In order to reduce the crime to manslaughter, that statute required the defendant to prove by a preponderance of the evidence the affirmative defense of extreme emotional disturbance. The Court held that this statutory scheme did not violate due process because the New York law contained only two elements—intent to cause death and causing death—which were not negated by the affirmative defense. In declaring the New York statute constitutional, the Court relied heavily on its earlier decision in *Leland v. Oregon,* 343 U.S. 790, 72 S.Ct. 1002, 96 L.Ed. 1302 (1952). In *Leland,* the Court had held that a state may constitutionally require the defendant to bear the burden of proof on the question of his insanity when the issue is raised as a defense to a charge of murder. The Court's unwillingness to

reconsider its holding in *Leland* had been made plain in *Rivera v. Delaware,* 429 U.S. 877, 97 S.Ct. 226, 50 L.Ed.2d 160 (1976). There, the Court had dismissed as not presenting a substantial federal question an appeal raising the claim that *Leland* had been overruled by *Winship* and *Mullaney.* In *Patterson,* the Court concluded that New York's murder statute "did no more than *Leland* and *Rivera* permitted it to do without violating the Due Process Clause." 432 U.S. at 206, 97 S.Ct. at 2325. "Under those cases," the Court continued, "once the facts constituting a crime are established beyond a reasonable doubt, based on all the evidence including the evidence of the defendant's mental state, the State may refuse to sustain the affirmative defense of insanity unless demonstrated by a preponderance of the evidence." *Id.*

The *Patterson* Court "thus decline[d] to adopt as a constitutional imperative, operative countrywide, that a State must disprove beyond a reasonable doubt every fact constituting any and all affirmative defenses related to the culpability of an accused." *Id.* at 210, 97 S.Ct. at 2327. Rather, the Court held that "the Due Process Clause requires the prosecution to prove beyond a reasonable doubt *all of the elements included in the definition of the offense of which the defendant is charged.*" *Id.* (emphasis supplied). In refining the principles of *Mullaney* and *Winship, Patterson* makes clear that a state may require a defendant to prove an affirmative defense provided it "does not serve to negative any facts of the crime which the State is to prove in order to convict." *Id.* at 207, 97 S.Ct. at 2325.

In cases following *Patterson,* the Supreme Court has continued to emphasize that "in determining what facts must be proved beyond a reasonable doubt the state legislature's definition of the elements of the offense is usually dispositive." *McMillan v. Pennsylvania,* 477 U.S. 79, 85, 106 S.Ct. 2411, 2416, 91 L.Ed.2d 67 (1986). In *McMillan,* the petitioners challenged Pennsylvania's Mandatory Minimum Sentencing Act, which provides that anyone convicted of certain enumerated felonies is subject to

a mandatory minimum sentence of five years' imprisonment if the sentencing judge finds, by a preponderance of the evidence, that the person "visibly possessed a firearm" during the commission of the offense. *Id.* at 81, 106 S.Ct. at 2414. The petitioners argued that "if a State wants to punish visible possession of a firearm it must undertake the burden of proving that fact beyond a reasonable doubt." *Id.* at 84, 106 S.Ct. at 2416. The Court rejected this contention, finding *Patterson* rather than *Mullaney* controlling. Because Pennsylvania's statute expressly provides "that visible possession of a firearm is not an element of the crimes enumerated in the mandatory sentencing statute, § 9712(b), but instead is a sentencing factor that comes into play only after the defendant has been found guilty of one of those crimes beyond a reasonable doubt," *id.* at 85–86, 106 S.Ct. at 2416, the Court found no due process violation.

Finally, in *Martin v. Ohio*, 480 U.S. 228, 107 S.Ct. 1098, 94 L.Ed.2d 267 (1987), the Supreme Court considered whether Ohio could constitutionally require the defendant to prove self-defense as an affirmative defense. The defendant was charged with aggravated murder, defined as " 'purposely, and with prior calculation and design, caus[ing] the death of another.' " *Id.* at 1100 (quoting Ohio Rev.Code Ann. § 2903.01 (1982)). The Court was "not moved by assertions that the elements of aggravated murder and self-defense overlap in the sense that evidence to prove the latter will often tend to negate the former." *Id.* at 1102. The Court also rejected the defendant's argument that self-defense negated the elements of unlawfulness and "criminal" intent. The Court determined that, although unlawfulness and "criminal" intent are "essential for conviction," Ohio courts have held that these requirements are satisfied when the elements of the offense have been proved. *Id.* at 1103. The Court concluded that it was "no more convinced that the Ohio practice of requiring self-defense to be proved by the defendant is unconstitutional than [it was] that the Constitution requires the prosecution to prove the sanity of a defendant who pleads

not guilty by reason of insanity." *Id.* The Court thus reemphasized the significance of *Leland* and *Rivera* to the constitutional analysis in *Patterson* and upheld Ohio's statutory scheme under a straightforward application of those cases.

### 2.

The Supreme Court's recent opinion in *Hicks v. Feiock*, — U.S. —, 108 S.Ct. 1423, 99 L.Ed.2d 721 (1988), applies the principles of the foregoing cases to a situation similar to the one before us. Mr. Feiock had failed to comply with a court order to make child support payments. He defended against subsequent contempt charges brought by the state of California by claiming that he was financially unable to make the required payments. The intermediate state appellate court "annulled the contempt order, ruling that the state statute purports to impose 'a mandatory presumption compelling a conclusion of guilt without independent proof of an ability to pay,' and is therefore unconstitutional because the 'mandatory nature of the presumption lessens the prosecution's burden of proof.' " *Id.* at 1428 (quoting *In re Feiock*, 180 Cal.App.3d 649, 225 Cal.Rptr. 748, 751 (Cal.Ct.App.1986)). The California Supreme Court denied review, but the Supreme Court of the United States granted certiorari. The issues raised on certiorari were as follows:

> First is whether the ability to comply with a court order constitutes an element of the offense of contempt, or, instead, inability to comply is an affirmative defense to that charge. Second is whether § 1209.5 requires the alleged contemnor to shoulder the burden of persuasion or merely the burden of production in attempting to establish his inability to comply with the order. Third is whether this contempt proceeding was a criminal proceeding or a civil proceeding, *i.e.,* whether the relief imposed upon respondent was criminal or civil in nature.

*Id.* The state argued that the state appellate court had erred in its determinations on the first two points of state law. However, the Supreme Court held that it was

"not at liberty to depart from the state appellate court's resolution of these issues of state law." *Id.* (footnote omitted). Thus, the Court assumed the correctness of the state appellate court's determination that whether the individual is able to comply with the court order is an element of the offense of contempt rather than an affirmative defense to the charge, and that the statute shifted to the contemnor the burden of persuasion rather than simply the burden of production in showing inability to comply. Consequently, the Court addressed only the third issue and concluded that the "proper classification of the relief imposed in respondent's contempt proceeding is dispositive of this case." *Id.* 108 S.Ct. at 1432, The Court explained:

> As *interpreted by the state court here,* § 1209.5 requires respondent to carry the burden of persuasion on an element of the offense, by showing his inability to comply with the court's order to make the required payments. If applied in a criminal proceeding, such a statute would violate the Due Process Clause because it would undercut the State's burden to prove guilt beyond a reasonable doubt. See, *e.g., Mullaney v. Wilbur,* 421 U.S. 684, 701–702, 95 S.Ct. 1881, 1890–1891, 44 L.Ed.2d 508 (1975).

*Id.* 108 S.Ct. at 1432–33 (emphasis supplied). The Court then remanded to the state court for resolution of a factual issue that would determine whether the contempt proceeding was civil or criminal in nature. *Id.* at 1434.

Although factually similar, *Hicks* does not resolve the question presented in this appeal. It does, however, confirm the guiding principle: the elements of the offense, *as defined by state law,* must be established beyond a reasonable doubt. As the Supreme Court emphasized, "the state courts remain free to decide for themselves the state law issues we have taken as having been resolved in this case by the court below...." *Id.* at 1434 n. 13. In *Hicks,* California had explicitly interpreted its statute as requiring proof of ability to comply with the court order as an element of the charge of contempt. Therefore, the Supreme Court was not at liberty to dis-

agree. Accordingly, we must turn to an examination of whether the Indiana statutory scheme is the same as that of California or whether it differs in significant respects.

### 3.

In the direct appeal of Mr. Davis' conviction, the Indiana Court of Appeals, although not having the benefit of *Hicks,* followed the approach mandated by that case and by its precursors. However, the Indiana court's description of Indiana law makes it clear that there are significant differences between Indiana and California law. In rejecting Mr. Davis' argument that the affirmative defense of inability to pay negates an element of the crime within the meaning of *Patterson,* the court stated:

> In the present case Davis was charged under IND.CODE § 35–46–1–5. The statute provides two elements for this crime: 1) knowingly or intentionally, and 2) failing to provide support. Ability to pay is *not* an element of this offense. To strengthen the point that ability to pay is not an element, one need only look to the statute as originally enacted. The statute provided: "A person who, being able, intentionally fails to provide support to his dependent child commits...." 1976 Ind.Acts P.L. 148 § 6. In 1977 the legislature amended the statute but retained the language and element of "being able." 1977 Ind.Acts P.L. 340 § 88. The legislature again amended the statute in 1978, removing the element of "being able" and adding the defense "that the accused person was unable to provide support." 1978 Ind.Acts P.L. 144 § 9. As being able to provide support is not an element of the charged offense, the defense which the statute provides is thus what *Ward* [*v. State,* 438 N.E.2d 750 (Ind.1982)] described as an "affirmative defense that establishes separate and distinct facts in mitigation of culpability."

*Davis v. State,* 481 N.E.2d 434, 436 (Ind.Ct. App.1985) (emphasis in original).

Mr. Davis raises two arguments with respect to the Indiana court's treatment of the statutory definition.

#### a. *Inability to Pay as Negating "Knowingly" Requirement*

■ Mr. Davis takes issue with the state court's conclusion that ability to pay is not, for purposes of due process analysis, an element of the offense. He contends that the affirmative defense of inability to provide support is the negative of the mens rea element required by the statute; proof of inability to pay is the equivalent of proof that his failure to provide support was not "knowing" or "intentional." He argues that "knowingly" is synonymous with "purposely" and that, in order to act intentionally or knowingly, the actor must be engaging in a "willed" act. To prove wilfullness, he asserts, the state must prove that he was able to provide support, or that he deliberately or consciously failed to acquire the means to provide support.

Under Indiana law, a person acts "intentionally" when it is his conscious objective to engage in the conduct. Ind.Code. § 35–41–2–2(a). However, a person acts "knowingly" when he is aware of a high probability that he is engaging in the prohibited conduct. Ind.Code § 35–41–2–2(b). Thus, under the nonsupport statute, which permits conviction for *either* an intentional *or* a knowing act, the prosecution has the burden of proving beyond a reasonable doubt that the defendant *either* had the conscious objective *or* was aware of a high probability that he was failing to provide support. A person may be aware of a high probability that he is failing to provide support and still be unable to provide that support. Therefore, inability to provide support does not negate the mental element of "knowingly," which is sufficient in Indiana to hold a person criminally responsible for failure to provide support to a dependent child.

#### b. *Indiana's General Voluntariness Statute*

In addition to arguing that inability to pay negates the elements of "knowingly"

and "intentionally," Mr. Davis contends that inability to pay also negates the voluntariness of his failure to provide support. His argument rests on the assertion that the state may not convict for failure to provide support unless the state proves that this failure was voluntary. If, in fact, the state must prove voluntariness under the nonsupport statute and if inability to pay negates this element, then *Patterson* and its progeny require the prosecution to disprove inability to pay.

Indiana has a general voluntariness provision in its criminal code. That provision provides that:

> A person commits an offense only if he voluntarily engages in conduct in violation of the statute defining the offense. However, a person who omits to perform an act commits an offense only if he has a statutory, common law, or contractual duty to perform the act.

Ind.Code § 35–41–2–1. The district court held that this provision does not require that an *omission to act* be voluntary. It reasoned that the second sentence of the provision states only that the actor be under a duty to act. Thus, the district court read the two sentences of this provision separately and found that the first sentence, which sets forth the voluntariness requirement, did not apply to cases falling under the second sentence, which specifically refers to omissions.

We must respectfully disagree with the district court's interpretation of the general voluntariness statute because it is contrary to Indiana case law. In *Slusher v. State*, 437 N.E.2d 97 (Ind.Ct.App.1982), landlords were convicted of reckless homicide arising from the death of a tenant occurring when she fell to the ground after a thirdfloor railing gave way. The court held that, in order to obtain a conviction for failing to repair the railing, the state had to show that the landlords' omission *both* violated a duty *and* was voluntary. In discussing the voluntariness provision set out above, the court stated that the two sentences in this section "do not appear as separate sections or even separate paragraphs of the statute. They should, accordingly, be construed to-

gether." *Id.* at 100. And, in *Bergmann v. State*, 486 N.E.2d 653 (Ind.Ct.App.1985), the court applied the voluntariness statute to the conviction of parents for the death of their child resulting from their failure to provide medical treatment. Citing to the *Slusher* case, the *Bergmann* court held that "[a]n act of omission is an offense only if the defendant has a statutory, common law, or contractual duty to perform the act *and* 'voluntarily' engages in the omission which constitutes the breach." *Id.* at 661 (emphasis supplied).

The district court held, in the alternative, that the general voluntariness statute does not apply to the nonsupport statute. We agree. The question of whether voluntariness, as defined in the general voluntariness statute, is an element of the offense of nonsupport of a dependent child was not addressed by the Indiana Court of Appeals, although Mr. Davis raised the issue in his state court brief. We therefore must proceed without the benefit of that court's interpretation of its own state law. We could take the state court's silence to mean that the state court *sub silentio* rejected Mr. Davis' argument that voluntariness is an element of the offense. The appellate court explicitly stated that "the statute provides *two* elements," *Davis*, 481 N.E.2d at 436 (emphasis supplied), and then did not mention voluntariness. However, because the petitioner's due process argument rises or falls on how state law is interpreted, we believe we ought to articulate a more reasoned response to his voluntariness argument.

An argument identical to that of Mr. Davis was raised in *Davis v. McCotter*, 766 F.2d 203, 205 (5th Cir.1985). In considering a general voluntariness requirement in the Texas Penal Code, the Fifth Circuit declined to read the element of voluntariness into the offense of aggravated robbery. The aggravated robbery statute contained no specific voluntariness requirement and the Texas Court of Criminal Appeals had already held that voluntariness was not an element of aggravated robbery. *Id.* at 204 (citing *Bermudez v. State*, 533 S.W.2d 806, 807 (Tex.Crim.App.1976)). The Fifth Circuit therefore followed Texas' definition of the elements of the offense and held that it was permissible to require the defendant to prove his lack of voluntariness as an affirmative defense.

We think the Indiana Supreme Court, if confronted with the issue, would apply a similar construction to its nonsupport statute. In *Sanders v. State*, 466 N.E.2d 424 (Ind.1984), the Indiana Supreme Court had to decide whether involuntariness was a defense to a charge of robbery. The defendant claimed that he had been forced to commit the robbery and that therefore his actions were involuntary. The trial court determined that this defense amounted to one of duress which, under the Indiana Code, was not available to a defendant charged with committing an offense against the person. In determining whether the legislature intended to permit a defendant to rely on the general voluntariness statute in such a situation, the Indiana Supreme Court relied on "general rules of statutory construction which are used as guidelines to determine the intention and meaning of legislative enactments." *Id.* at 427. The court explained:

> [S]tatutes relating to the same general subject matter are *in pari materia* and should be construed together so as to produce a harmonious statutory scheme. Accordingly, when one statute deals with a subject in general terms and another statute, pertaining to the same subject, deals in a more detailed and specific manner, then the two should be harmonized if possible. If the two statutes present an irreconcilable conflict, however, then the more detailed statute will prevail over the less detailed statute pertaining to the same subject matter.

*Id.* at 428. The court went on to hold that the general voluntariness statute dealt with criminal culpability in general terms and therefore must give way to the more specific legislative determination on the unavailability of the defense of duress for the crime of robbery.

■ Just as the voluntariness requirement conflicted with the absence of a duress defense in *Sanders*, so does it conflict with the specific legislative determination

that, in the nonsupport statute, inability to pay is not an element of the offense but an affirmative defense. We therefore believe that the Indiana Supreme Court would determine that the general voluntariness provision does not apply to this offense. Consequently, we reach the same result as the Fifth Circuit in *McCotter* and find no constitutional violation under *Patterson* in requiring the defendant to prove inability to pay.

We perceive no inconsistency between this interpretation of Indiana law and the *Slusher* and *Bergmann* opinions. Although both those cases applied the general voluntariness provision to situations where the defendants failed to act when they were under a legal duty to do so, they also involved a prosecution for reckless homicide under which there was no specific legislative mandate that contradicted the general voluntariness requirement. Under the nonsupport statute, the legislature has specifically provided that involuntariness, in the form of inability to pay, is an affirmative defense, and this specific legislative mandate must prevail over the more general voluntariness rubric with which it conflicts.

We hold, therefore, that the Indiana requirement that a defendant in a criminal nonsupport case prove that he is financially unable to support his child does not constitute an unconstitutional shifting of the burden of proof to the defendant.[3]

B. *Fundamental Fairness*

■ Mr. Davis' second due process argument is that his conviction violates due process *even if* this court finds that inability to pay does not negate any element of the offense of nonsupport as defined under Indiana law. Mr. Davis asserts that Indiana's statutory scheme, which permits a state to convict a defendant for a crime of omission without requiring the state to prove that the defendant could have acted, violates principles of fundamental fairness.

A state's decision to allocate the burden of proof on a mitigating or justifying factor to the defendant "is not subject to proscription under the Due Process Clause unless 'it offends some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental.' " *Patterson v. New York*, 432 U.S. 197, 201–02, 97 S.Ct. 2319, 2322–23, 53 L.Ed.2d 281 (1977) (quoting *Speiser v. Randall*, 357 U.S. 513, 523, 78 S.Ct. 1332, 1341, 2 L.Ed.2d 1460 (1958)). The Supreme Court has admonished that "we should hesitate to conclude that due process bars the State from pursuing its chosen course in the area of defining crimes and prescribing penalties." *McMillan v. Pennsylvania*, 477 U.S. 79, 86, 106 S.Ct. 2411, 2417, 91 L.Ed.2d 67 (1986). The Court stated:

> "[T]he Due Process Clause requires the prosecution to prove beyond a reasonable doubt all of the elements *included in the definition of the offense* of which the defendant is charged." [*Patterson*, 432 U.S.] at 210, 97 S.Ct., at 2327 (emphasis added). While "there are obviously constitutional limits beyond which the States may not go in this regard," *ibid.*, "[t]he applicability of the reasonable-doubt standard ... has always been dependent on how a State defines the offense that

---

**3.** The Supreme Court of Louisiana has reached the same conclusion with respect to its criminal neglect of family statute. In *State v. Cheatwood*, 458 So.2d 907 (La.1984), the court held that physical incapacity was an affirmative defense. The court said:

> Physical inability to perform an affirmative duty is statutorily recognized as a defense which negates criminal responsibility. Since "justification" defenses are not based on the nonexistence of any essential element of the offense, but rather on circumstances which make the accused's conduct excusable on policy grounds, such defenses should be treated as affirmative defenses which the accused

must establish by a preponderance of evidence.

*Id.* at 910 (footnotes omitted). In analyzing whether the burden had been impermissibly shifted to the defendant, the court, relying on *Patterson v. New York*, 432 U.S. 197, 97 S.Ct. 2319, 53 L.Ed.2d 281 (1977), wrote:

> Nevertheless, there is a logical distinction between those defenses which actually defeat an essential *element* of the offense and those defenses which present exculpatory circumstances that defeat culpability despite the state's proof beyond a reasonable doubt of all the essential elements.

*Id.* at 910 n. 4 (emphasis in original).

is charged in any given case," *id.*, at 211, n. 12, 97 S.Ct., at 2327. *Patterson* rests on a premise that bears repeating here:

"It goes without saying that preventing and dealing with crime is much more the business of the States than it is of the Federal Government, *Irvine v. California*, 347 U.S. 128, 134 (1954) [74 S.Ct. 381, 384, 98 L.Ed. 561] (1954) (plurality opinion), and that we should not lightly construe the Constitution so as to intrude upon the administration of justice by the individual States. Among other things, it is normally 'within the power of the State to regulate procedures under which its laws are carried out, including the burden of producing evidence and the burden of persuasion,' .... *Id.* at 201–202, 97 S.Ct. at 2322–23 (citations omitted)."

*Id.* at 85, 106 S.Ct. at 2416. Of course, a state may not define a crime in such a way as to avoid the strictures of *Winship. See id.* at 86, 106 S.Ct. at 2417 ("As *Patterson* recognized, of course, there are constitutional limits to the State's power in this regard; in certain limited circumstances *Winship's* reasonable doubt requirement applies to facts not formally identified as elements of the offense charged."); *Mullaney,* 421 U.S. at 698, 95 S.Ct. at 1889 ("[I]f *Winship* were limited to those facts that constitute a crime as defined by state law, a State could undermine many of the interests that decision sought to protect without effecting any substantive change in its law."). However, the Supreme Court, as yet, has declined to "lay down any 'bright line' test," and instead has left the constitutionality of state statutes in this area "to depend on differences in degree." *McMillan,* 477 U.S. at 91, 106 S.Ct. at 2419. Despite this case by case approach, we have no trouble in concluding that Indiana's nonsupport statute "falls on the permissible side of the constitutional line." *Id.*

Mr. Davis contends that ability to act is an important component of any crime of omission. *See* W. LaFave & A. Scott, *Substantive Criminal Law* § 3.3(c) at 275–78 (1986). However, we are not dealing with a case where the state has imposed criminal liability for an omission *without regard* to whether the defendant had the ability to act. Quite the contrary, the state of Indiana has explicitly provided that if the defendant was unable to provide support for his dependent children, then he will not be held criminally liable. Thus, the issue raised by the petitioner's appeal is not whether the state may punish conduct which is beyond the control of the defendant, but rather whether the state may require the defendant to bear the burden of proof that his conduct is, in fact, beyond his control.

The Supreme Court has rejected the view that "anything in the Due Process Clause bars States from making changes in their criminal law that have the effect of making it easier for the prosecution to obtain convictions." *McMillan,* 477 U.S. at 89 n. 5, 106 S.Ct. at 2418 n. 5. Requiring the defendant to bear the burden of proof on the question of his ability to pay is not contrary to fundamental fairness; in fact, common sense supports such an allocation of the burdens of proof. In holding that inability to pay is an affirmative defense under a similar statute, the Ohio Court of Appeals made the following comment:

To place *upon the state* the burden of proving that the defendant is able to pay is unreasonable. Much of the information which the state would need to prove such ability to pay is either protected by privacy laws or protected by his Fifth Amendment right against self-incrimination. The appellant himself has knowledge of where and when he worked, how much he earned, the extent of his property, and what other expenses he had. He can fairly be required to adduce such evidence to support an affirmative defense of lack of ability to pay.

*State v. Wright,* 4 Ohio App.3d 291, 448 N.E.2d 499, 503 (Ohio Ct.App.1982) (emphasis supplied). The relative positions of the parties with respect to the information needed to prove inability to pay is indeed a compelling reason for placing the burden of proof in this case on the defendant. The imposition of criminal liability for failure to support one's dependent children without

requiring the state to prove ability to provide support no more offends fundamental principles of justice than does requiring the defendant to prove insanity rather than the state to prove sanity. *See Leland v. Oregon,* 343 U.S. 790, 72 S.Ct. 1002, 96 L.Ed. 1302 (1952).

### Conclusion

For the foregoing reasons, the judgment of the district court is affirmed.

AFFIRMED.